IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOANN PATRICIA BOSSE,

    Plaintiff,

v.                                                                               2:18-cv-00475-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Joann Patricia Bosse's Motion to Reverse and Remand (Doc. 23), which was fully briefed on December 5, 2018. *See* Docs. 26, 27, 28. The parties consented to my entering final judgment in this case. Doc. 20. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinions of non-examining state agency medical consultants S. Adamo, PsyD., and Edith King, PhD. I therefore GRANT Ms. Bosse's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (internal quotation and citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (internal quotation and citation omitted). While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

2

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.     Background and Procedural History

Ms. Bosse, currently age 48, earned a bachelor's degree in journalism and previously worked as a real estate broker, directory assistance operator, and administrative clerk. AR 87, 120, 128.[4] She filed an application for Disability Insurance Benefits ("DIB") on September 17,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 17-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

3

2014,[5] alleging disability since May 25, 2012, due to major depressive disorder, post-traumatic stress disorder ("PTSD"), anxiety disorder, personality disorder, bi-polar disorder, and recurring lumbago with sciatica. AR 223–24, 236, 239. The Social Security Administration ("SSA") denied her claim initially and on reconsideration. AR 128–40, 141–56, 164–67. Ms. Bosse requested a hearing before an ALJ. AR 168−69. On February 17, 2017, ALJ Michael Leppala held a hearing. AR 79–127. ALJ Leppala issued his unfavorable decision on June 12, 2017. AR 15–36.

The ALJ found that Ms. Bosse last met the insured status requirements of the SSA on June 30, 2014.[6] AR 20. At step one, the ALJ found that Ms. Bosse had not engaged in substantial, gainful activity from her alleged onset date of May 25, 2012, through her date last insured of June 30, 2014. AR 20. At step two, the ALJ found that Ms. Bosse suffered from the following severe impairments: affective disorder, anxiety disorder, PTSD, alcohol and substance abuse disorder, and personality disorder. *Id.* Additionally, at step two, the ALJ concluded there was no evidence that Ms. Bosse's alleged lumbago and sciatica met the durational requirements of the SSA program or created any specific functional limitations regarding her ability to perform work-related activities and therefore found those impairments non-severe. AR 20–21.

At step three, the ALJ found that none of Ms. Bosse's impairments, alone or in combination, met or medically equaled a Listing. AR 21−22. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Bosse's RFC. AR 23–29. The ALJ found Ms. Bosse had the RFC to

---

[5] The Disability Determination and Transmittal Form notes Ms. Bosse's application date as "9/15/14." AR 140–41. The application itself, however, is dated September 17, 2014. AR 223.

[6] The ALJ notes Ms. Bosse's date last insured as both June 30, 2014 and June 31, 2014. AR 18, 25. Based on other references in the record, the June 31, 2014 date appears to be a typographical error, and the correct date appears to be June 30, 2014. *See* AR 2, 211, 236.

4

> perform medium work as defined in 20 C.FR 404.1567(c) except that the
> Claimant is able to occasionally lift and/or carry fifty pounds; frequently lift
> and/or carry twenty-five pounds; stand and/or walk about 6 hours in an 8-hour
> workday, and sit for about six hours in an eight-hour workday, all with normal
> breaks. She is further limited to frequently climbing ramps or stairs, never
> climbing ladders, ropes or scaffolds, frequently balancing, frequently stooping,
> frequently kneeling, frequently crouching, and frequently crawling. The Claimant
> is able to understand, carry out, and remember simple instructions and make
> commensurate work-related decisions, respond appropriately to supervision,
> coworkers, and work situations, up to and including two hours at a time with
> normal breaks throughout a normal workday. She is able to perform simple,
> routine, and repetitive tasks and is suitable for jobs involving work primarily with
> things and not people.

AR 23.

At step four, the ALJ concluded that Ms. Bosse was unable to perform her past relevant work. AR 29. The ALJ found Ms. Bosse not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as a kitchen helper, dining room attendant, and cleaner. AR 29–30.

On June 13, 2017, Ms. Bosse requested review of the ALJ's unfavorable decision by the Appeals Council. AR 222. On March 23, 2018, the Appeals Council denied the request for review. AR 1–6. Ms. Bosse timely filed her appeal to this Court on May 22, 2018.[7] Doc. 1.

**IV. Ms. Bosse's Claims**

Ms. Bosse raises three arguments for reversing and remanding this case: (1) the ALJ impermissibly picked and chose among the limitations found by non-examining consultants S. Adamo, PsyD, and Edith King, PhD; (2) the ALJ failed to provide legitimate reasons for improperly weighing the findings of her treating provider Stephanie Lynch, CNP; and (3) the ALJ failed to provide legitimate reasons for rejecting the opinion of examining psychologist Nick Barneclo, PhD. *See* Doc. 23. For the reasons discussed below, the Court finds that the ALJ

---

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2–3.

5

impermissibly picked and chose from the limitations noted in the opinion of the non-examining consultants, and remands on this basis. The Court does not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V. **The ALJ Erred in Failing to Either Incorporate, or Explain Why He Rejected, Moderate Limitations Noted in the Medical Opinions of S. Adamo, PsyD., and Edith King. PhD.**

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[8] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ

---

[8] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, for all claims filed on or after March 27, 2017. Ms. Bosse filed her claim on September 17, 2014; thus, SSR 96-5p applies.

6

"must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 ("It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions." (citing 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii)).

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

Ms. Bosse argues that the ALJ impermissibly "picked and chose" from among the moderate mental limitations in the opinions of non-examining consultant psychologists Drs. Adamo and King.[9] Doc. 23 at 14–18. Specifically, Ms. Bosse argues that the ALJ erred by giving these opinions "great weight," while ignoring some of the moderate limitations these psychologists identified in their Mental Residual Functional Capacity Assessment ("MRFCA")

---

[9] Drs. Adamo and King apparently are licensed psychologists, *see* AR 132, 137, 149, and consequently are "acceptable medical sources." 20 C.F.R. § 404.1513(a)(2) (effective Sept. 3, 2013 to Mar. 26, 2017).

7

without explanation. *Id.* The Commissioner argues that the questions and ratings contained in the MRFCA are merely a helpful tool in "determining [] [an] individual's ability to perform sustained work activities," but is not the "actual" MRFCA, which is "recorded in the narrative discussion" of Section III.[10] Doc. 26 at 4 (internal quotations omitted). The Commissioner also argues that the ALJ "correctly looked" to the narrative in Section III, and that these assessments aligned with the "moderate limitations" in Section I. Doc. 26 at 5. The Commissioner additionally argues that the ALJ may account for "moderate limitations with an RFC restricting Plaintiff to unskilled work." Doc. 26 at 6. I disagree with the Commissioner.[11]

An ALJ is required to consider and discuss both Section I and Section III findings. As the Honorable Stephan M. Vidmar thoroughly explained in his opinion rejecting similar arguments that an ALJ is not required to consider Section I findings, the Program Operations Manual System ("POMS"),[12] regulations, and case law require the ALJ to address all of a

---

[10] The consulting psychologists in this case did not use the same MRFCA forms discussed in *Carver v. Colvin*, 600 F. App'x 616, 618−20 (10th Cir. 2015) (unpublished), which relied on POMS DI 24510.060. However, the MRFCA forms used in this case contain the same rating system and the same four general categories of limitations as special Form SSA-4934-F4-SUP and directed the consultants to discuss plaintiff's mental capacities in narrative form. *See* AR 135−37, 151−53. Thus, the MRFCA form is sufficiently analogous to special Form SSA-4734-F4-SUP to allow the Court to determine whether, in consideration of POMS DI 24510.060, the specific psychological limitations at issue should have been included in the RFC.

[11] I repeatedly have rejected the Commissioner's argument that the ALJ need only account for a doctor's Section III findings. *See, e.g.*, *Heckel v. Colvin*, No. 15cv453-LF, 2016 WL 9781164 (D.N.M. Sept. 28, 2016); *Martinez v. Colvin*, No. 15cv817-LF, 2016 WL 9774939 (D.N.M. Nov. 23, 2016); *Bennett v. Berryhill*, No. 16cv399-LF, 2017 WL 5612154 (D.N.M. Nov. 21, 2017); *Jones v. Berryhill*, No. 15cv842-LF, 2017 WL 3052748 (D.N.M. June 15, 2017); *Saavedra v. Berryhill*, No. 16cv822-LF, 2018 WL 324236 (D.N.M. Jan. 8, 2018); *Dorsainville v. Berryhill*, No. 16cv693-LF, 2018 WL 637393 (D.N.M. Jan. 31, 2018).

[12] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

doctor's findings, not just those in Section III. *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158–66 (D.N.M. 2016). An ALJ may rely exclusively on the Section III findings only if the "Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished). Moreover, the ALJ "should [not] turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished). If a consulting psychologist's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).

The Court must determine whether the Section III narratives of Drs. Adamo and King adequately explain the moderate limitations noted in their Section I MRFCA's.[13] *See Carver*, 600 F. App'x at 619 ("if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding"). If not, under *Haga*, 482 F.3d at 1208, and *Frantz*, 509 F.3d at 1302–03, the ALJ has a duty to explain why he adopted some of the limitations noted by Drs. Adamo and King while rejecting others.

---

[13] As mentioned above in note 10, Drs. Adamo and King's MRFCAs are not divided into sections, but for ease of reference and because prior caselaw refers to "sections," the Court will refer to the "ratings" portion of each MRFCA as "Section I," and the "narrative" portion that follows the ratings as "Section III."

9

In this case, Drs. Adamo and King both noted in Section I that Ms. Bosse had the following moderate limitations:

**<u>Understanding and Memory</u>**

- Moderate limitation in the ability to understand and remember detailed instructions;

**<u>Sustained Concentration and Persistence</u>**

- Moderate limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

**<u>Social Interaction</u>**

- Moderate limitation in the ability to respond appropriately with the general public;
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

**<u>Adaption</u>**

- Moderate limitation in the ability to respond appropriately to changes in the work setting.

AR 135–137, 151–153.

In Section III of his MRFCA, Dr. Adamo found that:

Claimant can recall simple instructions. Claimant can complete simple tasks over a work week. Claimant can do non-public work. Claimant can tolerate typical stressors.

AR 135-137.

In Section III of her MRFCA, Dr. King found that:

Claimant can do non-public work. Claimant can perform simple and some complex tasks. Claimant can relate to others on a superficial work basis. Claimant can adapt to work situations. Mental impairments with medical treatment do not appear to be severe.

AR 153.

In Section I, Drs. Adamo and King both found that Ms. Bosse had moderate limitations in her "ability to understand and remember detailed instructions," and in her "ability to carry

out detailed instructions." AR 135, 152. Both psychologists adequately accounted for these moderate limitations in their respective Section III narratives by stating that Ms. Bosse could complete or perform "simple tasks," and "some complex tasks." AR 136, 153. Similarly, in Section I, Drs. Adamo and King both found that Ms. Bosse had a moderate limitation in her "ability to interact appropriately with the general public," and in Section III, they found that Ms. Bosse could do "non-public work." AR 136, 153. Thus, both psychologists adequately accounted for Ms. Bosse's moderate limitation in her ability to interact appropriately with the general public in their Section III narratives.

However, both psychologists found in Section I that Ms. Bosse had a moderate limitation in her "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." AR 136, 153. In Section III, Dr. Adamo did not provide any narrative explanation related to this limitation. AR 136. Thus, Dr. Adamo did not adequately account for this moderate limitation. In Section III of Dr. King's assessment, she stated that Ms. Bosse could "relate to others on a superficial work basis," which partially explains the moderate limitation of Ms. Bosse's "ability to get along with coworkers or peers." AR 153. However, Dr. King did not adequately explain the latter part of the limitation: "without distracting them or exhibiting behavioral extremes." *Id*. It is not obvious that "relating to others on a superficial work basis" adequately accounts for the interactive social skills necessary to avoid distracting coworkers or peers or avoid exhibiting behavioral extremes. Thus, Dr. King did not adequately account for this moderate limitation either.

In Section I, both Dr. Adamo and Dr. King found that Ms. Bosse had a moderate limitation in her "ability to respond appropriately to changes in the work setting." AR 136, 153. In Section III, without any explanation, Dr. Adamo found that Ms. Bosse "can tolerate typical

11

stressors." AR 137.  Thus, Dr. Adamo's Section III narrative appears to conflict with his assessment that Ms. Bosse has a moderate limitation in her ability to respond appropriately to changes in the work setting, and it therefore is inadequate.  Similarly, Dr. King found in her Section III narrative that Ms. Bosse could "adapt to a work situation."  AR 153.  Like Dr. Adamo's finding, without additional explanation, Dr. King's narrative appears to conflict with her Section I finding and is inadequate.

Both Drs. Adamo and King found that Ms. Bosse had a moderate limitation in her "ability to maintain attention and concentration for extended periods" as well as a moderate limitation in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  AR 136, 152.  Neither psychologist addressed either of these limitations in their Section III narratives.  *See* AR 136, 153.

The four Section I abilities that Drs. Adamo and King failed to adequately explain in their Section III findings are work-related mental abilities that are critical to unskilled work, and the ALJ must adequately address them in the RFC.[14]  *See* POMS 25020.010(B)(3)(e), (i).

---

[14] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945."  SSR 96-8p, 1996 WL 374184, at *1.  This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities.  An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

Because Drs. Adamo and King's Section III narratives did not adequately explain their Section I findings of a moderate limitation in these critical areas, and because the ALJ failed to incorporate these limitations into his RFC or explain why he rejected them, remand is required. *See Carver*, 600 F. App'x at 619.

The Commissioner argues that the ALJ "correctly looked to the psychologists' subsequent narrative opinion," and that "even if the ALJ were required to include the moderate limitations," the ALJ's RFC does not conflict with the assessments of Drs. Adamo and King. Doc. 26 at 5. The Commissioner cites both POMS § DI 25020.010 § B(I) and *Carver v. Colvin*, 600 F. App'x at 619 (10th Cir. 2015), for the proposition that the MRFCA ratings in Section I serve only as a helpful worksheet, and that the ALJ need only consider the non-examining consultant's written narrative provided in Section III. Doc. 26 at 5 . But *Carver* also held that an ALJ cannot turn a blind eye to moderate Section I limitations. 600 F. App'x at 619. Further, the POMS state in its description of the "moderately limited" checkbox that "[t]he degree and extent of the capacity or limitation *must be described* in narrative format in Section III [of the MRFCA]." *Id*. (emphasis added) (internal quotations omitted). Thus, the court in *Carver* concluded that an MRFCA could not properly be considered part of the substantial evidence supporting an ALJ's RFC finding if a Section III narrative fails to describe each of the Section I

---

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

moderate limitations, or if it contradicts those Section I limitations. *Id*. Because Drs. Adamo and King failed to describe all the Section I moderate limitations in their Section III narratives, their Section III findings alone cannot be part of the substantial evidence supporting the ALJ's findings.

The Commissioner's argument that the ALJ's RFC incorporated all the moderate limitations found by Drs. Adamo and King is not persuasive. As explained above, the Court agrees that both the Section III narratives and the RFC incorporated some of the moderate limitations found by Drs. Adamo and King, including Ms. Bosse's limited ability to understand and remember detailed instructions, to carry out detailed instructions, and to respond appropriately with the general public. The Commissioner argues that the limitation to unskilled work in the RFC fully accounts for the remaining moderate limitations the psychologists found, including the limited ability to maintain attention and concentration for extended periods; the limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the limited ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the limited ability to respond appropriately to changes in the work setting. *See* Doc. 26 at 5−6. But the Commissioner himself says that unskilled work requires "the ability to maintain attention for extended periods of two-hour segments," the ability to "[r]espond appropriately to supervision, co-workers and usual work situations," and "[d]eal with changes in a routine work setting." Doc. 26 at 6. Furthermore, the ALJ did not explain how he determined that despite Ms. Bosse's limited ability to maintain attention for extended periods, she could maintain attention for the extended period of two hours. The ALJ also does not explain how Ms. Bosse's limited ability to get

14

along with coworkers and peers without distracting them or exhibiting behavioral extremes is consistent with the unskilled work requirement that she can respond appropriately to co-workers and usual work situations. And the ALJ did not explain how Ms. Bosse's limitation in being able to respond appropriately to changes in the work setting is consistent with the unskilled work requirement that she be able to deal with changes in a routine work setting. The ALJ's RFC did not incorporate all the moderate limitations found by Drs. Adamo and King, nor did the ALJ explain why he did not adopt all those limitations. Remand is required.

The Commissioner cites *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), for the proposition that a "it is well settled . . . that an ALJ may account for moderate mental limitations with an RFC restricting Plaintiff to unskilled work. Doc. 26 at 6. The Commissioner's reliance on *Vigil* is misplaced. In *Vigil*, the Tenth Circuit held that the ALJ adequately accounted for the claimant's moderate limitations in concentration, persistence and pace by "limiting him to unskilled work." 805 F.3d at 1204. The moderate limitations at issue in *Vigil* were limitations in the claimant's ability to "perform complex tasks." *Id.* at 1203–04. The ALJ in *Vigil* noted that the claimant retained the capacity to "perform at least simple tasks." *Id.* at 1204. Because unskilled work only requires the ability to understand, remember, and carry out **simple** instructions and make **simple** work-related decisions, the Court in *Vigil* held that the RFC limiting the claimant to unskilled work adequately addressed the claimant's limitation in his ability to perform complex tasks. *Id.* The *Vigil* Court was careful to point out, however, that "[t]here may be cases in which an ALJ's limitation to unskilled work does not adequately address a claimant's mental limitations." *Id.* (citing *Chapo*, 682 F.3d 1285, 1290 n.3). Thus, *Vigil* does not stand for the broad proposition that a limitation to unskilled work adequately addresses **all** moderate limitations in concentration, persistence and pace. Nor does

15

*Vigil* stand for the broad proposition that a limitation to unskilled work adequately addresses **all** moderate mental limitations generally.

Furthermore, with regard to moderate limitations in concentration, persistence and pace, the Tenth Circuit has held only that such moderate limitations *may* be accounted for in an RFC that restricts a claimant to performing simple tasks or unskilled work. *See Lee v. Colvin*, No. 15-6027, 2015 WL 7003410, at *3 (10th Cir. 2015) (emphasis added). But this is not always the case. "A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) (citing *Chapo*, 682 F.3d at 1290 n.3, which stated that a restriction to "simple work" is a vague catch-all term which is insufficient to adequately account for mental limitations). "[A] moderate impairment is not the same as no impairment at all." *Haga*, 482 F.3d at 1208. Thus, "moderate limitations must be accounted for in the RFC finding." *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished).

In this case, unlike *Vigil*, an RFC limiting Ms. Bosse to unskilled work does not adequately account for all Ms. Bosse's moderate mental limitations. Drs. Adamo and King both assessed Ms. Bosse as having the following moderate limitations: moderate limitation in the ability to maintain attention and concentration for extended periods; moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and moderate limitation in the ability to respond appropriately to changes in the work setting. AR 135–137, 151–153. These are mental abilities which are "critical for performing unskilled work." POMS

16

DI 25020.010(d)(3)(e), (i). These tolerances and requirements "are usually strict." *Id.* Thus, unlike *Vigil*, which discussed a limitation in the ability to do complex tasks—a mental ability not required to perform unskilled work—the moderate limitations at issue in this case are critical to the performance of unskilled work. The ALJ therefore erred in not incorporating these limitations, or adequately explaining his reasons for rejecting them.

Moreover, one limitation not addressed by Drs. Adamo and King's Section III findings is a moderate limitation that "would likely interfere with work in almost any setting"—Ms. Bosse's limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without any unreasonable number and length of rest periods. *See Chapo*, 682 F.3d at 1290. The ALJ's colloquy with the vocational expert ("VE") highlighted the vocational significance of this limitation. The ALJ asked the VE about "employer typical tolerances for absenteeism," specifically for "unplanned" absences. AR 121. The VE stated that "one or two days a month accumulates very quickly and one would lose one's job." *Id.* The ALJ then asked about "employer typical tolerances for being off task" that were "beyond normal breaks and lunch breaks." *Id.* The VE stated that it was hard to "quantify," but went on to state that if a claimant's "work interferes, if you not working interferes with the work of other people, it's immediately noted and that's a problem immediately." *Id.* The VE further stated that a person who repetitively displays such behavior "will lose [] [their] job." *Id.* Given that this hypothetical presented an individual with obvious difficulties completing a workday and workweek without interruptions from psychologically based symptoms, or one unable to maintain a consistent concentration and persistence without an unreasonable number and length of rest periods, it is telling that the ALJ ultimately omitted these uncontroverted limitations from Ms. Bosse's RFC. *See Wiederholt v. Barnhart*, 121 F.

App'x 833, 839 (10th Cir. 2005) (unpublished) (finding that "[t]he omission of the ALJ's more specific findings is particularly significant given that, when the ALJ posed a hypothetical question incorporating all of the limitations found by [the doctor], the VE opined that [the claimant] would be precluded from all work activity"); *Baysinger v. Astrue*, 11-cv-333 WYD, 2012 WL 1044746, at *5 (D. Colo. Mar. 28, 2012) (concluding that the ALJ's failure to include moderate limitations in assessing mental RFC "particularly egregious . . . because the VE testified that Plaintiff would be disabled if these moderate impairments were included in the RFC"); *see also Vamvakerides v. Colvin*, No. 14cv897 SCY, Doc. 25 at 14–15 (D.N.M. Apr. 7, 2016). The fact that the ALJ asked the VE about these limitations but then failed to include or adequately explain Drs. Adamo and King's finding of moderate impairment in this area supports Ms. Bosse's argument that the ALJ impermissibly "picked and chose" among the moderate limitations, in violation of *Haga*.

## VI. Conclusion

The ALJ erred in failing to incorporate or to adequately explain why he rejected four moderate limitations assessed by Drs. Adamo and King into Ms. Bosse's RFC: the moderate limitation in Ms. Bosse's ability to maintain attention and concentration for extended periods, the moderate limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the moderate limitation in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the moderate limitation in her ability to respond appropriately to changes in the work setting. The Court remands so that the ALJ can remedy these errors.

18

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse or Remand (Doc. 23) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
 Presiding by Consent